Good morning. May it please the Court, Bob Stumpf for Appellant Stonebrae L.P. I'd like to reserve a few minutes for rebuttal, if I may. Your Honor, this is actually a very interesting case that goes to the question of what district courts should do when they're faced with ambiguities in a Rule 68 offer. It may not be quite as interesting as Barry Bonds, but it has much more importance, I think, in the long run. Because what this Court can do, if it is so inclined, is to clarify this area of the law, not just in this case, where there's about a million and a half dollars worth of prejudgment interest at stake, but to set a rule that governs proceedings in the circuit. And to cut to the chase, our position is that you should do what the Fourth Circuit did in 2011, a case called Bosley v. Mineral Commission. And there, the Court was raised. Wouldn't we have to do that en banc? Because it seems that the Ninth Circuit law is pretty clear on the Rule 68 someone offers and how to go about in resolving them. And it seems like there's a number of cases that say that the normal rules of contract construction apply. Why would we not follow our own precedent, which seems pretty clear on this? There's no case that says that in the context of a Rule 68 offer. The case that's cited in response is a case called Erdman that does talk about settlement agreements, not Rule 68 offers. And that makes all the difference. I would concede. Judge Shorter, you look like you have a question. Well, I just wonder, if you would just explain to me what the district court did wrong here, maybe that would, in the context of your question. It applied the wrong legal standard in resolving the ambiguity. You have three choices. You can do what Judge Chin, I have enormous respect for Judge Chin. He's a fine judge. He did what you would do if you had a regular old commercial contract between, you know, private parties. He said, I'm going to look at these frenzied guidance. I'm going to, I'm aware of contraproferendum. I'm going to mix it all up and I'm going to see which side is more persuasive. That's one way to do it. At the other end, we have Bosley, which says, if I've got a Rule 68 offer, a Rule 68 offer is very different from an ordinary commercial contract. There's no negotiation. It's take it or leave it. And if you leave it, you don't just walk away. There's some consequences that can attach from leaving it. So because it's so different, we have to apply a different way to resolve ambiguities. And what we do is. Kagan. And maybe I'm wrong. This is the opportunity to make sure I understand this. Guerrero v. Cummings, are you aware of that case? Yes. It says the usual rules of contract construction apply to interpreting the terms of a Rule 68 settlement offer. And then it goes on to say that what it links to is. And hence, we apply contraproferendum, which is the key contract principle I'm relying upon here. It's not quite as clear as Your Honor suggests because there's other Ninth Circuit authority that we cited that says it's a middle ground. That what you do is you can look at the extrinsic evidence. But you look at it only to determine whether, once you've looked at it, the ambiguity is eliminated. And if the answer is yes, then the ambiguity is gone. Otherwise, you go back to the default principle, which is contraproferendum. So what we have here is what Judge Chin did on the one hand, which is what you would do with an ordinary commercial contract. On the other hand, we have Bozzi, which says that Rule 68 is very different. And hence, all we do is we pick up the offer and we read it. And we say, is it ambiguous? And if it is, which Judge Chin, of course, found that it was, that's the end of it. We resolve the ambiguity against the drafter. It's a nice, clear, bright line. It makes sense. The party that prepares the Rule 68 offer, in this case, toll, could have made it very clear, could have made it explicit. Instead, they made it ambiguous. And it put us in a very difficult position. In between these two, these tolls that I've articulated, is the position that the Ninth Circuit has taken in the Muckleshoot and the Viscaino cases, which I've cited at length in our briefs, which we think at least drives for it. It's not, is it black letter clear? No, but it's a glimmer that in this circuit, when you have a Rule 68 offer, what you do is you look at the extrinsic evidence. You only ask yourself one question. Now that I've done that, does the ambiguity remain or does the extrinsic evidence eliminate the ambiguity? Doesn't Muckleshoot apply to attorney fees in Federal civil rights cases? Yes. You're exactly right, Your Honor. Okay. That's why I say it's a glimmer. It's not a, you know, it's not a black letter law. I think the field is wide open for this Court to do what the Court did in Bosley. And I think that's what the Court should do. But you don't have to go that far. You can follow Viscaino and you can follow Muckleshoot and you can say in this case, the extrinsic evidence does, certainly does not resolve the, it does not eliminate the ambiguity. And hence, we fall back on the rule that Rule 68 offers are very different, very different. We're talking about a, you know, a contract is created by a Federal rule as opposed to a commercial contract. And so you shouldn't, for good policy reasons, which, again, Bosley and numerous other cases, I mean, I cited a raft of district court cases that reached the same conclusion. And one of them said in resolving ambiguities, some courts have looked to extrinsic evidence, but more often have construed ambiguities against their offerers without resorting to extrinsic evidence. So to answer a question I think you posed, Justice Breyer, what did Judge Chen do wrong? He looked at the extrinsic evidence, which we think you shouldn't do under Bosley, but even if you take the middle ground, he looked at it and rather than saying, by golly, after I've done it, the ambiguity remains, hence I'm going to apply contraproferendum, he said, I'm going to weigh it. And resolve it. And resolve it. That's exactly right, Your Honor. Resolve is one thing. Eliminate is a very different word. And, you know, that's our position. I think it's well supported in the cases. I think going forward, what district courts need and what practitioners need, we need a bright line. Because, remember, one of the points of a Rule 68 offer is to bring the litigation to an end. Let's stop litigating. We've had, you know, two more years of litigation than, you know, how much an attorney needs to do this. If there were a bright line, which there should be, we wouldn't be doing this. So it's important to us in this case, clearly. I'm here. But it's also important to the bench and the bar in the state of California. I'd be curious to respond to questions. I see we have a few minutes left. But I also want to just touch on the alternative basis we have for reversing. And we call this affectionately the floor theory. And if you look at a case called Chesapeake Industries, that case talks about two public policies which are involved and, to some extent, at cross-purposes in Rule 68 jurisprudence. One is the whole point of prejudgment interest. I'm talking about prejudgment interest now. It's to make the aggrieved party whole because it's been out the loss of use of its money or property. It's a make whole kind of concept. On the other hand, prejudgment interest also, there's a strand of authority that, well, it's really not fair to make the defendant pay prejudgment interest if the defendant doesn't know how much he's supposed to pay. That's why we have the difference between liquidated sums and unliquidated sums in the California statute. In this case, Judge Tenn said, well, once we introduced our alternative theory of actual damages rather than liquidated damages, we introduced uncertainty and, hence, I was not required to award prejudgment interest under the mandatory prong. And I understand what he's saying, but I think he got it wrong as a matter of law. And this is a de novo issue that you review afresh because at all times, from the day the case was filed until the day the case was settled until today, toll knew that if it lost the case, it was going to have to pay at least the amount of the liquidated damages amount. And you say, how can that be? Well, it was undisputed. Of course, we have the liquidated damages amount. There's no fight about that. They also knew that if they lost the case and actual damages applied, we would get, you know, four or five times that amount, $20 million. That's why they withdrew their affirmative defense of attacking the liquidated damages clause. So the point here, and I think it's pretty obvious by now, is that at all times, they knew that if they lost, they'd have to pay at least the liquidated damages amount, and that's certainty at least to that extent. And my analogy would be the Al Hussrey case where there were two different claims by the plaintiff. One was a claim for recovery of a $100,000 deposit in a real estate transaction, and the other was for lost profits. And the court of appeals said, well, you don't get prejudged interest on the lost profits, that's unliquidated, but you do get prejudged interest on part of the claim, that is, the $100,000, because that part of it is certain. Here, the analogy is, to the extent of the floor, our claim is certain, and that's our alternative theory. I think we may have some questions after we hear from you. Thank you, Your Honor. Good morning, Your Honors. Donald Putterman for Respondent and Cross-Appellant Toll. I'd like to pick up on the question that Judge Merguia asked a little bit earlier, because I think that's essential and fundamental to the inquiry here. Namely, Judge Merguia asked, what is it that Stonebrae believes that Judge Chen did wrong? The underlying question to that, of course, is, well, what exactly did Judge Chen do? And Judge Chen did not actually find there was an ambiguity here. In fact, if you look at the order, which obviously is the starting and the ending point of the inquiry here on appeal, and I'll just direct the Court's attention to the Stonebrae's excerpts of record, Volume I, and in particular, pages ER-36 and ER-37, where Judge Chen addresses this issue. And starting at line 13 on, excuse me, line 14 on page 36, Judge Chen describes between lines 14 and 21 what the competing arguments are on the issue of whether or not the parties had actually agreed to mandatory interest. It is at that point, after describing the competing arguments, that Judge Chen says, the Court finds Toll's construction of the Rule 68 offer more persuasive. When you view it in that context of Judge Chen first having described the competing arguments, what he's saying is, is Toll's argument is more persuasive. He then goes on to say, first, and as we've argued extensively in our brief, quote, First, the Rule 68 offer refers to, open internal quote, pre-judgment interest as determined by the Court pursuant to California Civil Code, Section 3287, close internal quote. It referred to Section 3287 in its entirety and did not limit its application or otherwise refer to Subdivision A. Now, the first part of any inquiry here, regardless of whether the Court would follow Ninth Circuit, well-established Ninth Circuit authority, as Judge Schroeder pointed out, or would go for a change of the law, as opposing counsel has suggested, is, is that offer reasonably susceptible to two different interpretations and that would make it ambiguous. And what Judge Chen is saying here is, first of all, it's not. It refers to 3287, which necessarily encompasses both A and B, B, of course, being the discretionary award of pre-judgment interest. A request for discretionary pre-judgment interest was not made here, as Judge Chen very specifically pointed out in a footnote at the end of his opinion. Judge Chen then goes on to say, second, the Rule 68 offer suggests the Court is to exercise judgment at discretion. Otherwise, the term, quote, as determined by the Court would appear superfluous. Yet Stonebrae argues that pre-judgment interest under Subsection A is mandatory. Its position lacks consistency. So what Judge Chen is actually doing there is stating that this is not, that Stonebrae's interpretation is not one to which the Rule 68 offer is reasonably susceptible. Judge Chen then goes on to describe on ER 37 that the parole evidence that was presented is consistent with the conclusion that he's already made. And, yes, both parties presented parole evidence. Now, I am not hearing counsel state explicitly that parole evidence should not be considered. As I understand it --" Scalia's argument is you can consider it, but only to remove the ambiguity. Correct. And his argument is if you can't do that, then tie goes to the runner. Right. But if there's no ambiguity found in the first place, such as is the case here, then the parole evidence doesn't come into it. Now, obviously, both parties present parole evidence because, to be frank about it, that's what lawyers do. We present every argument possible, and very frequently, judges will address the additional arguments, whether they need to or not, or they will say, on the other hand, I don't need to reach that issue. So the issue of the supposed ambiguity is just not applicable here, because what Stonebrae claims that Judge Chen did wrong is not what Judge Chen did. And their entire argument proceeds on the assumption that there's an ambiguity, and that assumption is actually not supportable here in the record. Now, to turn to counsel's brief remarks about certainty, and in particular, the argument about the floor. The fact of the matter is there is no case law anywhere that specifically says that if you have a claim, the fact that there may be a lower amount that's certain, but there's no ceiling. And here, they estimated their damages to be $21 million, but the pleading was according to proof at trial. We never reached that point. The proof was never presented, and it was left open until Stonebrae accepted the Rule 68 offer. Furthermore, the whole argument is, in fact, a non sequitur, because the assumption that if Toll loses, it will have to pay at least the amount of the liquidated damages is actually not true. Let me pose this hypothetical. The jury decides that the liquidated damages clause is not enforceable. The jury then decides, based upon the evidence and testimony presented to it, that the amount of damages is actually less than the amount of liquidated damages. So in that case, how can one say that there is a guaranteed floor if Toll loses? Let me just ask you, though. You did draft the offer, and you did put in the words, previously, that there was prejudgment interest. Why isn't it fair to assume that you contemplated that there would be an award? What we contemplated was that they would apply for an award of prejudgment interest under Section 3287. Okay. That includes 827 3287b. And, in fact, in the colloquy before the Court, my co-counsel pointed out that we expected that they would apply under both a and b. And, quite frankly, if they had applied under 3287b, which is entirely discretionary with the district court, whatever the district court decided, I questioned whether we would be here today, because unless Judge Chedd did something that was beyond the realm of reason, which is not something Judge Chedd is known for doing, there would essentially be no issue left. They were, in fact, invited to apply for prejudgment interest to be determined by the Court. They, not we, chose not to request discretionary prejudgment interest. And, in fact, as Judge Chedd pointed out in his footnote, they then attempted to somehow remedy the problem by improperly submitting a noninvited letter after the matter was under submission, which Judge Chedd ordered stricken. Okay. Do you want to talk about your cross appeal? Yes. The cross appeal is on the issue of attorneys' fees. And I'm going to go directly to our principal point here. And the principal point is whether or not it was appropriate or an abuse of discretion under the applicable standard for Judge Chedd to award attorneys' fees that were incurred specifically by Stonebrake to prosecute the claim that the liquidated damages provision was unenforceable, and the subsequent portion of our counterclaim, which was directly inspired by that, namely the counterclaim for fraud. The primary problem we have with that are two things. And I recognize that abuse of discretion is obviously a significant hurdle to overcome. But the problem is this. We ended up with the acceptance of a Rule 68 offer that was for the exact amount of the liquidated damages, not a penny more. Stonebrake, in fact, argued here and below that, in effect, it obtained all the recovery that it sought by obtaining it. That's part of their argument that somehow this was a certain amount. Now, the problem comes in under the Helmsley analysis, though, is that if we assume that the two claims were related, the Court then has to look at whether the claim was successful or unsuccessful, what measure of success there was. And what Judge Chen resorted to, and here's the specific problem, Judge Chen did not find that any part of the liquidate of the claim that the liquidated damages provision was unenforceable, any part of it was successful. What he did do was say that he cannot say, and it might well have contributed to the settlement of the matter. Now, I am not aware of any case law, and none has been cited here, that says it is sufficient that if a claim, even if unsuccessful, contributed to the settlement of the matter, that that constitutes success for purposes of awarding, in this case, almost a billion dollars of attorney's fees specifically attributable. So you don't dispute that it was related? Your Honor, we did argue that they were unrelated and different. I think the better argument here, to be very frank with the Court, is that they were related because they arose from the same body of facts, which was the breach of contract, but. So your main argument is then that Judge Chen abused his discretion in saying that it was successful? That's right, because what happens then is that essentially writes the whole question of relative success or lack of success out of the equation, because what could and would say in any case? Well, the collective claims as a whole contributed to a settlement prior to the ultimate adjudication of the claims. And I don't think that's the law, and I don't think that was intended by the Supreme Court or ever intended by the circuit. And I want to just add to that the related issue of the question of whether the claim was not only not successful, but in fact was only interposed for tactical reasons and was frivolous. Now, to anticipate a question that I'm sure I would get otherwise, which we addressed specifically in the brief, yes, it is true. Judge Chen, there was no adjudication of whether or not the claim was frivolous. No question about that. But our point is, is that these were very – these are unique circumstances where we have the express admission by the gentleman in charge of the project for Stonebrain, the man who negotiated the contract, the man who executed the contract, that the liquidated damages clause was proper and appropriate, meaning, of course, that it was enforceable. Now, and this ties in again to the issue of potentially writing out the relative success requirement out of the standard for evaluating attorneys' fees, because, again, we know there's a policy in every court in this country against asserting frivolous claims for any reason, which obviously includes to obtain negotiated leverage. That being so, to then in effect say, well, but it contributed to settlement of the matter, runs squarely contrary to that policy. And I think that sets a very, very dangerous precedent, which I believe it's important that this Court nip in the bud. Sotomayor, it seems like the district court concluded settlement for, I guess, over 4 million, almost 5 million, which constituted all the relief initially sought by the plaintiff, was an excellent result. Yes, it did. Our point, which we made in the brief and which I'll make again here, is it's an excellent result if that had still been their only claim. But when they then inserted a new claim, which claimed up to $21 million, but they only got what they requested in the original claim, by that standard, it doesn't qualify as an excellent settlement, and it doesn't obviate, more importantly here, the need to determine whether that claim was relatively successful or unsuccessful on the merits. It's a different issue. Could Stormberry have achieved the bottom line result earlier? Well, it's hard to speculate about that because, obviously, they didn't. And what happened was, before the court-ordered settlement conference, before the magistrate judge, that's when they notified us, oh, by the way, we intend to file for leave to amend the complaint in order to add this other claim, that the liquidated damages clause was unenforceable. And if I might just briefly add, once again, the problem with that is it's a It potentially implies that they could make a claim which is wholly unsuccessful and potentially even frivolous. It sounds like the answer to my question is that's hard to determine. Absolutely. Thank you. Thank you very much. Thank you, Your Honor. I'd like to make just one point about the attorney's fees, which I don't think is a serious cross-appeal. And then I have three comments directed to each one of you individually because I've tried to listen carefully to your questions and your comments. The only point I'll make about attorney's fees is that the position Mr. Putterman, my esteemed colleague, has said is frivolous, that we took, namely that the liquidated damages clause was invalid and enforceable, was in fact the very position they took when they attacked that same clause in their affirmative defense. Enough said about that. Judge Chen did not abuse his discretion in any way, shape or form on the attorney's fees. Now, moving on to the three comments. Judge Hawkins, I think you hit it absolutely right. You even got the right metaphor. The tie goes to the runner here. To the extent that the Ninth Circuit law has articulated a specialized jurisprudence in this area, I do think the rule that I articulated as kind of our lead argument, our brief, is the right rule for this, at least to the extent you want to build on what you've already got and not go all the way over to the Fourth Circuit. And that is, you can look at the extrinsic evidence, but for a limited purpose. And if it does not eliminate the ambiguity, game over. You fall back on the recognizing the very different context of a Rule 68 offer, and you construe the offer against the drafter, in this case, toll. The language of Harrington v. City of Sonoma at 907 says, first of all, saying that Rule 68 offers are subject to normal contract interpretation. Ambiguities are where there are ambiguities found to exist, extrinsic evidence of the party's actual intentions will be examined to clarify those ambiguities and arrive at the meaning of the offer. How do you deal with that? Well, I don't have a specific answer, because I don't know that case, Your Honor. But I've seen other cases, like Erdman, which I was going to direct to Judge Mergia. Because that's the case that my opponent relied principally upon. And I'd have to, you know, I can't address your case, Judge Hawkins, but if I may now move to Judge Mergia. In Erdman, if you look at page 880 and 879, what they do, they don't come out and say Rule 68 offers in this circuit are construed under the normal rules of construction. They adopt that principle. And again, as I said before, typically a settlement agreement is analyzed in the same manner as any contract. And then they cite specifically contraproferendum. I mean, to the extent that the circuit has taken a position squarely on Rule 68, I think Muckleshoot and Biscayne are much more persuasive, certainly than Erdman. I can't speak to your case, Judge Hawkins, but I certainly have not seen that as a bright letter, black letter law, and my opponent didn't cite it. And finally, Judge Schroeder. That's why we have great clerks. Judge Schroeder, I also think you hit the nail right on the head. When we got this offer, we were being offered exactly to the penny, and even to the reference to the escrow number, the liquidated damages amount, a sum that could not be more certain. They offered us attorney's fees as determined by the cost, including attorney's fees as determined by the court. And they also offered us prejudgment interest. And then we get to the phrase that we say is ambiguous. We thought we were being offered prejudgment interest. A lot of reasonable lawyers in my firm and others certainly thought they were being offered prejudgment interest. We had the right to apply under the statute for prejudgment interest, whether or not they offered it or not. I mean, that's not much of an offer if you're not offering what we thought was a clear, mandatory, non-discretionary subdivision of the section. Yeah. If you didn't have that last clause, you're free. And here I can address that. I'm glad you raised that, Judge, because I've got what I think is a perfect answer to that, as determined by the court. That sounds like discretion, doesn't it? It isn't in this context. And I'm sure you picked this up from the brief. But there was a fight that the court reserved about liquidate – about prejudgment interest. At a status conference, Stonebrae, my client, wanted to continue the trial. And Toll said, okay, you can continue the trial, but you have to cut off prejudgment interest as of the original trial date, because it's not fair to continue the trial and let prejudgment continue to run. We said we're not willing to do that. And Judge Chin continued the trial, and he reserved that issue for later determination. So, yes. Did something have to be determined by the court? Yes. That was the time period, whether or not you were going to cut off. And I think that compounds the ambiguity. It doesn't resolve the ambiguity. It compounds it. And as I said, if you look at pages 327 and 328 of the record, Judge Chin, talking about prejudgment interest, cites contraproferendum. He wouldn't do that if he didn't find the contract to be ambiguous. Thank you. Thank you. Before we conclude, I just – we may benefit from further briefing on the Harrington v. County of Sonoma. And so we'll issue a briefing order on that case so you all can give us your thoughts on that. So we'll issue that either later today or tomorrow. Thank you, Your Honor. Thank you very much for your oral arguments. And we – the case is now submitted, and we will be in recess. Thank you very much.
judges: Schroeder, Hawkins, Murguia